# United States District Court
## Middle District of Florida
## Orlando Division

ANN E. HUFFERT,

            Plaintiff,

-vs-                                    Case No.  6:06-cv-1776-Orl-31UAM

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

_____

## Report And Recommendation

**TO THE UNITED STATES DISTRICT COURT**

Plaintiff Ann E. Huffert  ["Huffert"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her application for disability insurance benefits and supplemental security income payments. *See* Docket No. 1 (complaint). For the reasons set forth below, the Commissioner's decision should be **REVERSED AND REMANDED**.

## I.     PROCEDURAL HISTORY

On July 25, 2002, Huffert filed a claim for a period of disability, disability insurance benefits, and supplemental security income benefits, claiming disability as of February 15, 2001.  R. 75.  On August 12, 2003, the Honorable Albert Gutera, Administrative Law Judge ["ALJ"] held a twenty-minute hearing on Huffert's claim in Daytona Beach, Florida.  R. 487-503.  Attorney Richard Schwartz represented Huffert at the hearing.  R. 487.  Huffert was the only person to testify.  R. 488. On August 28, 2003, ALJ Gutera issued a decision that Huffert was not disabled.  R. 35-45.  Huffert

requested review by the Appeals Council and submitted additional medical records.  R. 62.  On

August 13, 2004, the Appeals Council remanded the case to the ALJ to obtain additional medical

evidence regarding claimant's ankles, to consider further claimant's residual functional capacity, and

to obtain evidence from a vocational expert if warranted by the expanded record.  R. 61-63.

On December 1, 2005, the Honorable Joe Murray, ALJ, held a two hour hearing on Huffert's

claim in Daytona, Florida.  R. 451 - 503.  Attorney Richard Schwartz again represented Huffert at the

hearing.  R. 452.  The ALJ heard testimony from Huffert, Vocational Expert Cynthia Patterson

("VE"), and Medical Expert Neil Lewis.

On May 19, 2006, the ALJ issued a decision that Huffert was not disabled and not entitled to

benefits.  R. 12-23.  Following a review of the medical and other record evidence, the ALJ found that

Huffert could not perform her past relevant work as a housekeeper or cashier.  R. 16; 22, Finding 7.[1]

The ALJ found that Huffert nevertheless retained the residual functional capacity ["RFC"] to perform

a significant range of the physical exertional requirements of light work.  R. 22, Finding 6, 11.

Because of her mental impairment, Huffert was further limited to unskilled or semi-skilled work.

R. 20.  Applying the Medical-Vocational Guidelines, the ALJ concluded that Huffert was not disabled.

R. 22, Finding 12.

After considering additional medical records, R. 7, 10, the Appeals Council denied review.

R. 7-9.  On November 20, 2006, Huffert timely appealed the Appeals Council's decision to the United

States District Court.  Docket No. 1.  On April 9, 2007, Huffert filed in this Court a memorandum of

law in support of her appeal.  Docket No. 13.  On June 6, 2007, the Commissioner filed a

---

[1] The ALJ's decision is internally inconsistent regarding Huffert's ability to perform her past relevant work.  At
one point, the ALJ finds Huffert can return to her past work as a cashier.  R. 20.  In the "Findings" section, however, the
ALJ states Huffert is unable to perform any of her past relevant work.  R. 22.

memorandum in support of his decision that Huffert was not disabled.  Docket No. 14.  The appeal is ripe for determination.

## II.   THE PARTIES' POSITIONS

Huffert assigns five errors to the Commissioner.  First, Huffert claims that the Commissioner erred in failing to consider the side effects of her medications.  Second, Huffert claims that the Commissioner erred by failing to include in the hypothetical question posed to the VE all of Huffert's impairment.  Third, Huffert claims that the Commissioner erred in applying the correct legal standards to Huffert's allegations of pain.  Fourth, Huffert claims that the ALJ erroneously rejected the opinion of an examining orthopaedic specialist, Dr. Lower.  Finally, Huffert claims the ALJ failed to apply the correct legal standards in considering Huffert's symptoms.

The Commissioner argues that substantial evidence supports her decision to deny disability.  First, the Commissioner argues that the record failed to establish that Huffert suffered from medication side effects.  Second, the Commissioner argues that the hypothetical question to the VE accurately described Plaintiff's limitations.  Third, the Commissioner argues that the ALJ applied the proper subjective complaint standard.

## III.   THE STANDARD OF REVIEW

### A.   AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*

*v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

## B.    REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631,

636 - 37 (11th Cir. 1984).  A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of  42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to

consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).   After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090 - 92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095.  With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[2]  *Id.*

---

[2]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text.  In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction.  *Id.*  In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district

## V.   **APPLICATION AND ANALYSIS**

### A.   **THE FACTS**

Huffert was born December 2, 1957 (R. 29), and was 48 years old at the time of the ALJ's decision.  She dropped out of school in 9th grade and earned a GED when she was 15 years old and a certificate as a nurse's assistant when she was 18 years old; she completed 42 hours of college credits in a Registered Nursing preparatory program when she was 32 years old.  R. 161-162.  She has primarily been employed in housekeeping and as a cashier, last working in February 2001.  R. 162.  Huffert has not tried to work since February 2001.  R. 498.  Huffert is insured for disability benefits through June 30, 2001.  R. 16.

Huffert testified that in June 2001, she experienced intense pain in her right leg, ankle and knee, which she treated with Advil.  R. 491-92.  Huffert complained that she fell a lot, although she did not use an assistive device.  R. 490-91.  Huffert testified that she might fall two to three times a day, and that she might go a week without falling.  R. 495.  At the time of her hearing in August 2003, Huffert considered her biggest problem to be her ankles.  R. 495.

Huffert testified that she began having panic attacks in October 2001.  R. 492.  She saw Dr. Ledbetter for the attacks, and he prescribed medication.  *Id.*  Huffert testified that while having a panic attack, her heart races, she has trouble walking, she has blurred vision, and she stutters.  R. 493.  The attacks can last for two minutes to two hours.  *Id.*

---

court.  *Id.*  Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits.  *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

Huffert was treated at Lakeland Regional Medical Center on November 10, 2001, for complaints of shakiness and dizziness and was diagnosed with alcohol withdrawal and acute anxiety reaction. R. 133-134. She was treated for panic attacks of moderate severity at Memorial Hospital-Peninsula on December 1, 2001. R. 144-146. She was treated for panic attacks at Port Orange Urgent Care Center on June 17, 2002, after she ran out of Xanax and had an onset of anxiety and a panic attack. R. 156. Upon discharge, she was referred to her treating physician, Dr. Harold C. Ledbetter. *Id*.

On December 12, 2001, Huffert saw Dr. Ledbetter for right hip pain and bilateral ankle pain R. 190. Dr. Ledbetter diagnosed osteoarthritis at the hip and noted that Huffert needed a referral to an orthopaedic surgeon. *Id*. Huffert saw Dr. Ledbetter for a follow-up visit on February 1, 2002 for a panic attack. R. 189. She was given a refill of Xanax. *Id*. Huffert's medications were refilled again on March 25, 2002 for her anxiety and panic attacks. R. 188.

On June 17, 2002, Huffert again saw Dr. Ledbetter for her panic attacks. R. 186. Huffert complained that she has had a hard time keeping a job with her medications. *Id*. Dr. Ledbetter noted that Huffert was alert and oriented x3, and refilled her medication prescriptions. *Id*. Her diagnosis was hypertension and anxiety neuroses with panic attacks. *Id*.

Hugh A. Coleman, D.O. examined Huffert on September 18, 2002, in connection with her disability application. R. 157-60. Huffert's chief complaints were hypertension, bilateral ankle pain and arthritis. R. 157. Huffert's hypertension was under good control with medications. R. 157; 159. Huffert reported that the ankle pain was due to a motor vehicle accident in 1993. R. 157. Huffert reported her pain level as 7/10 in the left ankle, and 8/10 in the right ankle. *Id.* She complained of stiffness and swelling, which was worse with ambulation. *Id.* She took Darvon and Celebrex for the

pain, and does not use an assistive device. *Id*. She reports that she can walk up to four blocks, and then must rest due to pain. *Id*. Huffert had full use of her upper extremities. R. 159. An examination of the lower extremities revealed full range of motion, quadricep muscle strength 5/5 bilaterally, anterior tibialis muscle strength 5/5 bilaterally. R. 159. Huffert was able to ambulate more than 30 feet in the hallway, could squat without assistance, and had no easily reproducible fatigue. *Id*. No arthritic change was appreciated, and she had a normal gait. *Id*. Dr. Coleman assessed bilateral ankle pain status post trauma, hypertension under good control and tobacco abuse. R. 159.

William J. Freidenberg, Ph.D. conducted a psychological evaluation on September 19, 2002, in connection with Huffert's disability application. R. 161-63. Huffert reported feeling depressed and anxious, and that she periodically had been treated by mental health professionals since 1994. R. 161. Her last treatment was in approximately 1999. *Id*. Huffert reported a history of sexual abuse as a child, from age 8-12, with current emotional sequelae in the form of nightmares, flashbacks, exaggerated startle response and hypervigilence. R. 161. She also reported that she began abusing alcohol beginning when she was 32 years old, but had stopped in October of 2001. R. 162. Huffert was able to perform household chores, take care of her personal hygiene without reminders, watch television, go for walks around the block, and uses public transportation on her own. *Id*. She reports that she gets along adequately with others. *Id*. Huffert had walked to his office for the appointment. *Id*. Dr. Friedenberg found that Huffert was adequately dressed and groomed, her gait and posture were normal, her verbal communication was clear and logical in content, her eye contact was normal, her manner pleasant and cooperative, and her affect normal to mildly anxious. *Id*. Huffert reported that she suffers from spontaneous panic attacks several times per week, but that has never had any manic episodes. *Id*. Huffert also reported that she sometimes hallucinates hearing a male voice calling her

name or a knock at the door when no one is there. *Id.* She has a fear of heights and water. She also claims difficulty with memory of recent events. *Id.* Huffert, however, was able to calculate simple arithmetic problems, her judgment was preserved, and her ability to abstract meanings of proverbs was fairly good. R. 163. Dr. Freidenberg concluded that Huffert's overall memory and concentration were "at most mildly impaired" and diagnosed posttraumatic stress disorder with delayed onset (309.81), a depressive disorder not otherwise specified (311), a panic disorder with agoraphobia (300.21), polysubstance abuse in sustained full remission (304.80), and alcohol abuse in partial remission (305.00). R. 163.

A State Agency physician, Alejandro F. Vergara, M.D., completed a Mental Residual Functional Capacity Assessment on October 2, 2002. R. 164-82. Dr. Vergara found that Huffert was markedly limited in the ability to understand and remember detailed instructions and the ability to accept instructions and respond appropriately to criticism from supervisors, R. 164-65. In the "B" Criteria of the listings, however, there were no findings of marked limitation and only a moderate limitation in maintaining concentration, persistence, or pace. R. 178.

A State Agency physician completed a Physical Residual Functional Capacity Assessment on October 3, 2002. R. 219-226. The primary diagnosis was bilateral ankle injury, with a secondary diagnosis of pain and high blood pressure. R. 219. The State Agency physician concluded that Huffert could occasionally lift and/or carry up to 50 pounds, could frequently lift and/or carry up to 25 pounds, could stand or walk about 6 hours in an 8 hour workday, and could sit for a total of 6 hours in a work day. R. 220.

A State Agency physician, Michael Zelenka, Ph.D., completed a second Mental Residual Functional Capacity Assessment on January 10, 2003. R. 191-208. 19-226. Dr. Zelenka found that

Huffert was not markedly limited in any area. R. 191-92. He found that she was moderately limited in social functioning, and had moderate difficulties in maintaining concentration, persistence or pace. R. 206.

A State Agency physician completed a second Physical Residual Functional Capacity Assessment on February 7, 2003. R. 211-218. This time, the State Agency physician concluded that Huffert could occasionally lift and/or carry up to 20 pounds, could frequently lift and/or carry up to 10 pounds, could stand or walk about 6 hours in an 8 hour workday, and could sit for a total of 6 hours in a work day. R. 212.

Huffert saw Mark Gillespy, M.D. on July 14, 2003, for an orthopaedic evaluation. R. 229. Dr. Gillespy diagnosed bilateral ankle pain due to osteoarthritis and a decreased range of motion. *Id*. Huffert was scheduled to undergo pre-operative lab work on August 21, 2003 and right ankle fusion on August 23, 2003. R. 230.

On October 28, 2003, Huffert was hospitalized with complaints of arthritis in both ankles. R. 236. She was assessed as being in moderate distress and presenting now for elective ankle fusion. *Id*. Dr. Gillespy recommended surgery. R. 237. Right ankle fusion was performed that same day. R. 234.

On October 29, 2003, Karen Hacker, M.D. evaluated Huffert following a panic attack that she had the day after her surgery. R. 238-40. Dr. Hacker noted that Huffert's hypertension was likely secondary to increased anxiety and possible delirium tremens. R. 240. DT seizure precautions were taken. *Id*. Xanax was prescribed for then, to be followed by Ativan as needed. *Id*.

On December 3, 2003, Huffert went to the Halifax Medical Center Emergency Department complaining of anxiety after she ran out of medication. R. 183. Huffert denied any acute complaints

other than feeling "panicky." *Id.* She was given a limited refill until she could see her treating physician. *Id.*

In December 2003, Huffert was admitted to the hospital with altered mental status and confusion. R. 241-50. Huffert tested positive for opiates and benzodiazepines (psychoactive drugs, such as Xanax or Ativan) and an alcohol level of 2. R. 242. Huffert's altered mental status was most likely drug induced. R. 245. Huffert admitted that she had been drinking more recently, about 20 beers per week. R. 241; 244. She was diagnosed with ETOH dependency, resolving ETOH withdrawal symptoms, and rule out borderline personality disorder. R. 243.

On January 29, 2004, Huffert was seen at the emergency room with complaints of abdominal pain and was diagnosed with pneumonia. R. 270-274. In February 2004, she underwent a bronchoscopy, a right thoracotomy, decortication of the right lung, and an intercoastal nerve block and was diagnosed with severe right organized chronic empyema, right and middle lobe pneumonia, and severe malnutrition. R. 263-264.

In June 2004, she was examined by Mark Gillespy, M.D. and reported "not much pain" in her right ankle post fusion. R. 283. However, she complained her left ankle was very painful and was found to have crepitus with range of motion. *Id.* Dr. Gillespy recommended a left ankle fusion. *Id.*

In May 2005, Huffert underwent a physical consultative examination by Gregory Lower, D.O. R. 360-71. Huffert complained of sharp constant pain, swelling and loss of range of motion in both ankles. R. 361. She had a moderate, right lower extremity antalgic gait in reference to her right ankle. R. 362. Dr. Lower found that Huffert had suffered from status post bilateral severe posttraumatic osteoarthritis of both ankles with associated status post arthrodesis of the right ankle and loss of range of motion in both ankles. R. 363. Dr. Lower also noted status post IM rodding of the right femur.

*Id.*  Dr. Lower stated that Huffert's lower extremity orthopaedic pathology would cause her to have difficulty standing for protracted periods and walking long distances and would prevent her from balancing, squatting, or kneeling.  R. 364.  Dr. Lower further opined that Huffert could lift or carry less than 10 pounds, stand or walk less than two hours in an 8-hour workday, and was limited in her ability to push or pull in the lower extremities.  R. 368-69.  Finally, he concluded that she could never climb, balance, kneel, crouch, crawl or stoop.  R. 369.

On May 22, 2005, Huffert also underwent a psychological examination by Malcolm Graham III, Ph.D.  R. 372-76.  Huffert reported that the only time she has seen a mental health professional was in 1994 related to her car accident.  R. 373.  Huffert reported that she has panic attacks, but that she can go for five months without an attack, and then have five attacks in a single month.  *Id*.  She has not had a panic attack in four to five months, although she reported that she was "constantly anxious."  *Id*.  She further reported that she was scared, had heart palpitations and sweaty hands.  *Id*.  Dr. Graham found that her psychological test scores were of questionable validity and that Huffert was trying to present herself in a highly improbable favorable light.  R. 374.  Dr. Graham diagnosed Huffert with alcohol dependence, reportedly in very short-term remission, an alcohol-induced anxiety disorder, and a personality disorder not otherwise specified, with borderline and schizotypal characteristics.  R. 375.  Dr. Graham concluded that she had none to slight mental limitations in a Medical Source Statement of Ability to Do Work-Related Activities.  R. 377-79.

On November 29, 2005, David Williams, M.D. diagnosed Huffert with atypical chest pain and hypertension, based on her complaints of a one year history of chest pain of retrosternal pressure radiating to her left side.  R. 404.  An EKG test revealed normal sinus rhythm.  R. 405.  After a treadmill test, cardiac catherization was recommended.  *Id.*  On December 6, 2005, she underwent a

cardiac catherization and a percutaneous transluminal coronary angioplasty and stenting of the mild left anterior descending coronary artery.  R. 388-389.

On January 16, 2006, Huffert was diagnosed in the emergency room with acute anxiety and hypertension secondary to noncompliance with an anti-hypertensive regimen.  R. 401-402.

At the hearing held on December 1, 2005, medical expert Dr. Neil Lewis opined based on a medical records review that Huffert's primary impairment was substance abuse, primarily alcohol. R. 455.  He further opined that Huffert's anxiety was mild and that he would expect mild to moderate limitations in concentration.  R. 455-56.

B.     **THE ANALYSIS**

1.     **Side Effects of Medication**

Huffert argues that the ALJ erred in failing to consider the side effects of Huffert's medication. The Commissioner argues that Huffert's medical records fail to reflect that she suffered any side effects from medication, and that her listing of medication side effects on a form in support of her disability application is insufficient.  Doc. 14 at 5-6; R. 108, 121.

Huffert argues that the ALJ had a duty to elicit information from her regarding the side effects of medication, citing *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir. 1981) and 20 C.F.R. § 404.1529(c)(3)(iv).[3]  In *Cowart*, the Eleventh Circuit found that the ALJ failed to fully develop the record by asking about the side effects of claimant's medications when the claimant stated that she was "kind of zonked out most of the time" from taking prescribed drugs.  *Cowart*, 662 F.2d at 737. Although the court acknowledged that even if the record contained no medical evidence that the

---

[3] This section provides in pertinent part that: "Factors relevant to your symptoms, such as pain, which we will consider, include: . . .      (iv) The type, dosage, effectiveness, and side effects of any medications you take or have taken to alleviate pain or other symptoms."

claimant's medications were in unusually large doses or that the side effects were disabling, the court ruled that the ALJ should have, at a minimum, made a finding regarding the claimant's claimed side effects so that a reviewing tribunal could be assured that the claim was not ignored.  *Id*.

Huffert disclosed in her disability application forms that her medications cause drowsiness, diarrhea, and an inability to perform daily activities.  R. 108, 121.  At her hearing in August 2003, Huffert testified that she was not supposed to drive because of her medications, and that the medications make her sleepy and that she sleeps a lot.  R. 496-97.  She also told a doctor in June 2002, that she has had a hard time keeping a job with her medications.  R. 186.  The ALJ did not ask any questions or obtain any medical opinions regarding the side effects of Huffert's medications.  The ALJ also made no findings regarding the alleged side effects of Huffert's medications.

Contrary to the Commissioner's argument, this case is not like *Swindle v. Sullivan*, 914 F.2d 222 (11th Cir. 1990).  In *Swindle*, the claimant testified that she was unaware of any side effects from her medication, except that one specific medication may contribute to her headaches.  *Id*. at 224.  The ALJ determined that the side effects from the medication did not present a significant problem.  *Id*. at 226.  The court of appeals found that the ALJ's determination was supported by substantial evidence.  *Id*.

Although the Court notes a lack of corroboration in the medical records that Huffert's alleged sleepiness would interfere with her ability to work, it is not the Court's function in this case to make findings of fact or credibility.  Huffert sufficiently raised the issue of medication side effects.  It is irrelevant that Huffert's attorney failed to develop the record at the hearing, because the ALJ's obligation to develop a full and fair record exists even if the claimant is represented by counsel.  *Cowart*, 662 F.2d at 735.  Because the ALJ failed to develop the record in this area and failed to make

any findings regarding medication side effects, the Court should remand the action to the Commissioner pursuant to Sentence Four for further proceedings.

### 2.   __Hypothetical Question Posed to the VE__

Huffert contends that the ALJ found that she suffered "moderate difficulties in maintaining concentration, persistence or pace" (R. 18), but erred in failing to include this limitation as part of the hypothetical question posed to the VE.  The Commissioner contends that the ALJ's final RFC statement (R. 22) did not include this determination and, therefore, there was no error in questioning the VE.

For a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that includes all of the claimant's impairments.  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).   The ALJ must instruct the VE to consider all "severe" impairments when eliciting testimony.  *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir.1985). An ALJ is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford v. Comm'r*, 363 F.3d 1155, 1161 (11th Cir.2004).   When an ALJ poses hypothetical questions consistent with the RFC that are supported by substantial evidence, there is no error.  *Bouie v. Astrue*, 226 Fed.Appx. 892, 895, 2007 WL 812035 *2 (11th Cir. March 19, 2007).

The Commissioner is correct that the ALJ does not include in the RFC statement in the "Findings" portion of the decision that Huffert suffers from moderate difficulties in maintaining concentration, persistence or pace.  Indeed, the RFC statement in the "Findings" portion of the decision fails to reflect any mental impairment.  The failure to include in the RFC any mental limitation is inconsistent with the body of the opinion where the ALJ states that Huffert's anxiety, depressive disorders and alcohol abuse are "severe" within the meaning of the regulations, but not

severe enough to meet one of the Listings (R. 18), that Huffert's depression causes mild restrictions on her activities of daily living, mild difficulty in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace (R. 18), and she is limited to unskilled or semi-skilled work due to her "mental impairment." R. 20. Given this inconsistency, the Commissioner's argument that the Court should rely on the RFC statement contained in the "Findings" portion of the decision is unpersuasive.

The ALJ's hypothetical to the VE included a limitation of unskilled or semi-skilled work in the hypothetical question (482), but this limitation was not specified as a mental limitation. Indeed, the hypothetical question contains no statement regarding Huffert's "mental impairments." The Court finds that the hypothetical failed to include all of Huffert's impairments. The VE's opinion, therefore, does not constitute substantial evidence. The case should be remanded to the Commissioner pursuant to Sentence Four for further action on this basis as well.

### 3.   Application of the Correct Legal Standard

Huffert makes several arguments regarding claimed errors in applying the correct legal standard. The first argument focuses on the ALJ's rejection of Huffert's testimony because "the objective medical evidence failed to establish an underlying medical condition that could reasonably be expected to produce *incapacitating* pain." R. 19. Huffert argues that she was not required to prove incapacitating pain, but only that there was an objective medical condition of such severity that could be reasonably expected to cause the alleged pain. The Commissioner argues that Huffert is "playing word games," and the Court agrees.

It is clear that Huffert is focusing on the the Eleventh Circuit's three-part "pain standard,"[4] but the ALJ's statement was in the context of assessing Huffert's credibility, not application of the pain standard.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dep't of Health & Human Serv.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).

In this case, Huffert claimed that she was unable to work because of the pain.  The ALJ rejected Huffert's claim that she was precluded from all work activity because the medical record fails to establish an underlying medical condition that could reasonably be expected to produce such pain. R. 19.  The ALJ then sets forth sufficiently detailed reasons for his credibility finding.  R. 19-20.  One of these reasons was that Dr. Lower "did not indicate that the claimant's ankle pain would preclude all work activity."  R. 20.[5]  Another was Huffert's ability to participate in everyday activities was inconsisent with her allegations of pain.  R. 20.  The Court finds no error in application of the correct legal standard for assessing either Huffert's pain or her credibility.  Nor does the Court find that the ALJ erred in stating the correct test for determining Huffert's ability to work.

-------

[4] "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably be expected to give rise to the alleged pain."  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) *(quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

[5] Contrary to Huffert's argument, the ALJ did not "reject" Dr. Lower's opinion.  The cited sentence about which Huffet complains was not making a disability finding, but a credibility finding. ALJ Murray, however, failed to weigh the opinion of Dr. Lower or any other doctor except the State Agency physicians' physical RFC assessments.  R. 20; 211-226. (It is unclear whether ALJ Murray adopted any of conclusions from the prior ALJ's decision as he only incorporated by reference the discussion of the medical evidence.  R. 17.)  An ALJ's failure to state with particularity the weight given to different medical opinions and the reasons therefore is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

VI.     **CONCLUSION**

For the reasons stated above, the Court should reverse the Commissioner's decision and remand it to the Commissioner pursuant to Sentence Four or further action consistent with this Report and Recommendation.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Recommended in Orlando, Florida on November 8, 2007.**

*Donald P. Dietrich*
DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE


The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

The Honorable Gregory A. Presnell
United States District Judge

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Gerald F. Murray
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Desoto Bldg, #400
Jacksonville, FL 32256-1224